OPINION OF THE COURT
Joseph R. Glownia, J.
Plaintiff has commenced this personal injury action against a summer amusement park, defendant Island of Bob-Lo Company, Inc., doing business as Fantasy Island, and its owner, defendant International Broadcasting Corp., Inc. (hereafter Fantasy Island). Fantasy Island then commenced a third-party action against plaintiff’s employer, Maxwell Associates, Inc. (hereafter Maxwell). Both Fantasy Island and Maxwell have moved, inter alia, for summary judgment and dismissal of plaintiff’s complaint. Plaintiff has cross-moved seeking summary judgment on the second of the two causes of action in the complaint as well as other relief. Specifically, plaintiff seeks the following: (1) a declaration that section 37.09 of the Arts and Cultural Affairs Law applies to this action and that this section protects and governs these parties; (2) summary judgment in favor of plaintiff and against the defendants on the second cause of action herein, finding that defendants violated section 37.09 of the Arts and Cultural Affairs Law in failing to furnish safety equipment or devices constructed to arrest and/or cushion plaintiff’s fall and minimize the risk of injury to him; and (3) an order striking defendants’ affirmative defenses of culpable conduct, implied assumption of risk, express assumption of risk, culpable conduct of others, failure to state a cause of action, and waiver and release.
At issue before this court, which will be determinative of the principal question presented, is the applicability vel non of section 37.09 of the Arts and Cultural Affairs Law to the circumstances underlying this litigation.
That section, in pertinent part, reads as follows:
“Protection of aerial performers from accidental falls
“1. No person shall participate in any public performance or exhibition on a trapeze, tightrope, wire, rings, ropes, poles, or *103 other aerial apparatus which requires skill, timing or balance and which creates a substantial risk to himself or others of serious injury from falling, unless there shall be provided for such performance a safety belt, life-net, or other safety device of similar purpose suitably constructed and placed to arrest or cushion his fall and minimize the risk of such injury. No owner, agent, lessee, manager or other person in charge of a circus, carnival, fair, theater, moving-picture house, public hall, or other public place of assembly, resort or amusement, shall permit any person to take part in a performance specified herein without providing such safety device. Any such aerial performance or exhibition without such safety device in which the height of possible fall is more than twenty feet, shall be presumed to create a substantial risk of serious injury.”
The issue presented appears to be of first impression in this State. Accordingly, a detailed recitation of facts is required.
The plaintiff, a 21-year-old University of Wisconsin college student, entered into an artist employment contract with Maxwell for the time period July 8, 1988, through March 1, 1991. The contract provided that the artist plaintiff would perform 10 calendar weeks each year and present and display his aquatic talents including but not limited to: performing underwater swimming, diving, acrobatic diving, high diving, cliff diving, sponge diving, stunt, comedy, or gymnastic maneuvers which ultimately or immediately utilized a body of water in which to land or any ability to promote or work in any manner for Maxwell’s shows. In referencing plaintiff no less than 67 times as an artist, the artist employment contract further provided for numerous other artist/operator clauses, i.e., covenant not to compete, exclusive use of services, right of first refusal, and nondisclosure clauses. The contract further provided that plaintiff assumed responsibility for his own actions and safety.
On February 7, 1990, Fantasy Island entered into a contract with Maxwell whereby Maxwell would provide to Fantasy Island five performers, one of whom was plaintiff, as a comedy/ diving team to perform five shows daily for Fantasy Island. The contract further specified that each individual show to be performed at Fantasy Island would be approximately 20 minutes in length and include comedy and fancy diving. An approximate 60-to-80 foot high dive was contracted to be the finale of each show.
Additionally, Fantasy Island’s contract with Maxwell provided that Maxwell would supply complete diving equip *104 ment, to wit, one or two three-meter diving boards and a high dive ladder, as well as guide wires to be erected and torn down by Maxwell. Maxwell also contracted to provide Fantasy Island with full costuming and music for the show, as well as to supply transportation to and from Fantasy Island for all equipment at no cost to Fantasy Island. Maxwell also contracted to provide Fantasy Island with a master of ceremonies from within the cast of divers that Maxwell would be providing. The actual performance and supervision of the performers and employees were under the direction, supervision, and control of Maxwell.
On June 23, 1990, the plaintiff was assigned to and performing a comedy routine at Fantasy Island pursuant to his contract with Maxwell and the contract between Maxwell and Fantasy Island. In that specific comedy routine, the plaintiff and another performer appeared together on a diving board approximately three meters (9.4 feet) high above the pool and its concrete surroundings. Plaintiff had performed this act on numerous previous occasions. During the performance, the plaintiff was to act as if he had fallen off the board after being “pushed” by the other performer, hold onto the board with his arm while his torso and legs dangled off the side of the board, and then swing himself back up onto the board before concluding the routine. The parties have submitted as exhibits videotapes of the plaintiff on an earlier occasion along with a coperformer on another occasion. Both videotapes depict the comedy routine which was being performed by plaintiff at the time he was injured, along with photographs of the actual scene. It should be noted that plaintiffs role in the comedy routine was that of the person coming out of the audience. The act was intended to thrill the amusement park audience by simulating the “accidental fall.” On the date in question, plaintiff lost his grip during the comedy routine, fell head first toward the concrete below, struck the concrete edge of the pool and fell into the water. He was dazed and unable to swim and he remained in the water until rescued by his coperformers. As a result of this accident, plaintiff is permanently paralyzed from his neck down.
At the time of the accident, plaintiff was not provided with any type of safety belt or life net. There was no padding on or around any portion of the concrete below, whether on the edge of the pool or the other surrounding area, nor was there any other safety device suitably constructed and placed to cushion his fall and minimize the risk of injury.
*105 Section 37.09 of the Arts and Cultural Affairs Law is applicable to the plaintiff under the circumstance presented and the plaintiff has set forth a valid cause of action under the aforementioned section.
The facts as presented in this case provide no inherent inconsistency between the aerial statute under consideration mandating the use of safety devices designed to prevent a performer at an elevated location from reaching the ground level, and aquatic performers where the ultimate conclusion of an elevated performance is the descent to a body of water. The statute makes no such exclusion. Rather, it broadly covers aerial performances.
There is nothing to indicate that some safety devices offering protection should not be provided for that portion of an aerial performance which uses timing, balance, or skill even though it is combined with a dive which is ultimately cushioned by a body of water. Logic itself would exclude the actual dive or intentional descent. This would find further support in 12 NYCRR 41.8 (a) which provides that “[c] limbing or being hoisted to the apparatus, and climbing, sliding or being lowered therefrom to the surface beneath shall not be deemed a part of the performance for the purpose of this Part.”
Simply put, this was an accidental fall as plaintiff was performing on an aerial apparatus which performance required skill, timing or balance. Plaintiff was not injured while intentionally diving from the board into a pool of water. Rather, he was injured as he was performing a comedy routine, lost his balance, and unintentionally fell from the board to the ground below striking his neck/back on the concrete upon which no safety apparatus had been provided. This portion of the performance took place not over the water but over the substantial concrete perimeter of the pool underneath the ladder, tower, and a portion of the diving board.
Accordingly, both Fantasy Island and Maxwell’s motions for summary judgment and dismissal of the plaintiff’s complaint upon the ground that the section does not apply must be denied.
Arts and Cultural Affairs Law § 37.09 was originally passed in 1952 (L 1952, ch 116, § 1) as part of the Labor Law. From 1952 until 1983 this section was known as Labor Law § 202-a. In 1983, it was transferred verbatim into the new Arts and Cultural Affairs Law by chapter 876 of the Laws of 1983, and became section 37.09.
Plaintiff argues that the duty imposed in section 37.09 of the Arts and Cultural Affairs Law is identical to that imposed by *106 section 240 of the Labor Law. Therefore, it is nondelegable and where a violation occurs, resulting in an injury to a member of the class protected, liability is absolute and defendants cannot use the plaintiffs culpable conduct or assumption of risk as defenses to their liability.
No written legislative history regarding section 37.09 exists. In the sole published case authority on this statute, Ringling Bros.-Barnum & Bailey Combined Shows v Department of Labor (18 Misc 2d 1070, 1073-1074), the court held: “[the statute] is concerned with what happens to the performer or others after the performer has lost his balance and falls to the ground.”
The statute imposes a duty on the defendants to provide necessary safety devices, and obviously they did not. However, the statute also imposes a duty upon the plaintiff himself, where no safety devices are provided, not to participate or perform. Having participated in the performance, the circumstances under which plaintiff exercised his judgment to participate must be factually determined. Therefore, summary judgment based upon strict liability in favor of plaintiff cannot be awarded. Plaintiffs cross motion striking affirmative defenses must also be denied.